IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| Bert Glaser <br> 1246 Dockside Circle <br> Baltimore, MD 21224 <br> Individually, and on behalf of all others <br> similarly situated, <br>        Plaintiffs, <br><br> v. <br><br> AT&T Inc. <br> 195 Broadway <br> New York, NY 10007 <br><br> Serve: The Corporation Trust Incorporated <br>       351 W. Camden Street <br>       Baltimore, MD 21201 <br><br> Sprint Communications Company L.P. <br> 903 E. 104th Street <br> Kansas City, Missouri  64131 <br><br> Serve: The Prentice-Hall Corporation System <br>       7 St. Paul Street, Suite 1660 <br>       Baltimore, Maryland 21202 <br><br> T-Mobile USA, Inc. <br> 3650 131st Avenue SE, Suite 200 <br> Bellevue, Washington 98006 <br><br> Serve: CSC-Lawyers Incorporating Service <br>       7 St. Paul Street, Suite 1660 <br>       Baltimore, Maryland 21202 | Civil Action No.: 12-166 <br><br> **JURY TRIAL DEMANDED** |

| | |
|---|---|
| Apple, Inc.<br>One Infinite Loop<br>Cuptertino, California 95014<br><br>Serve: The Corporation Trust Incorporated<br>         351 West Camden Street<br>         Baltimore, Maryland  21201<br><br><br>HTC America, Inc.<br>13920 SE Eastgate Way, #200<br>Bellevue, WA 98005<br><br>Serve: National Registered Agents Inc.<br>         1780 Barnes Blvd SW, Building G<br>         Tumwater, WA 98512<br><br>Samsung Telecommunications America, LLC<br>2711 Centerville Road, Ste. 400<br>Wilmington, DE 19808<br><br>Serve: CSC Lawyers Incorporating Service Co.<br>         7 St. Paul Street, Ste. 1660<br>         Baltimore, MD 21202<br><br>Samsung (Opto) Electronics Co.<br>85 Challenger Road<br>Ridgefield Park, NJ 07660<br><br>Serve: Seung Yoo Yang<br>         6600 Virginia Manor Road<br>         Beltsville, MD 20705<br><br>Motorola Mobility, Inc.<br>600 North US Hwy 45<br>Libertyville, IL 60048<br><br>Serve: The Corporation Trust Incorporated<br>         351 W. Camden Street<br>         Baltimore, MD 21201 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| and | ) |
|  | ) |
|  | ) |
| Carrier IQ, Inc. | ) |
| 1200 Villa Street, Ste. 200 | ) |
| Mountain View, CA 94041 | ) |
|  | ) |
| Serve: Kelly Sharp | ) |
|     1200 Villa Street, Ste. 200 | ) |
|     Mountain View, CA 94041 | ) |
|  | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Bert Glaser ("Plaintiff"), on behalf of himself and a Class (defined below) of all others similarly situated, by and through his undersigned attorneys, brings this action against Defendants Apple Inc. ("Apple"), AT&T Inc. ("AT&T"), Carrier IQ, Inc. ("Carrier IQ"), HTC America, Inc. ("HTC"), Motorola Mobility, Inc. ("Motorola"), Samsung Telecommunications America, LLC and/or Samsung Electronics America, Inc. (together, "Samsung"), Sprint Communications Company L.P. ("Sprint"), and T-Mobile USA, Inc. ("T-Mobile") (collectively, "Defendants"), and in support thereof alleges as follows:

### NATURE OF THE ACTION

1. This lawsuit arises from the recent discovery that many mobile telephone companies have installed highly intrusive tracking software on cellular phones and other mobile devices that allows them to secretly gather information from the devices.

2. The software, known as "IQ Agent," is currently loaded on over 140 million mobile devices. Carrier IQ, the developer of the software, claims that IQ Agent is designed to provide mobile telephone companies with diagnostic information to help them identify and solve quality and service-related problems, such as battery performance and network performance issues. Carrier IQ has

expressly denied that IQ Agent records keystrokes, provides tracking tools, or inspects or reports the content of communications, including SMS or text messages.

3. However, an independent technology researcher and blogger named Trevor Eckhart has demonstrated that Carrier IQ's software is capable of surreptitiously capturing virtually any information entered on a mobile device, including keystrokes, text messages and Internet use.

4. Consumers using mobile devices equipped with Carrier IQ's software were not informed that the software was installed on their devices and were unaware that information from their devices could be intercepted, stored and transmitted by the mobile telephone companies.

5. Plaintiff brings this action individually and as a class action on behalf of himself and all other residents of the State of Maryland who owned and operated a mobile device equipped with IQ Agent or whose communications with such persons were actually intercepted by IQ Agent. Plaintiff seeks damages and injunctive relief under state consumer protection, wiretapping and privacy law.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants conduct business in this District.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000.

## PARTIES

8. Defendant Apple is a California corporation with its principal place of business at One Infinite Loop, Cupertino, California 95014. It is engaged in the business of manufacturing and selling mobile devices nationwide, including throughout the State of Maryland.

9. Defendant AT&T is a Delaware corporation based in Dallas, TX. It is engaged in the business of selling wireless network service nationwide, including throughout the State of Maryland.

10. Defendant Carrier IQ is a Delaware corporation based in Mountain View, CA. It is engaged in the business of developing, manufacturing, selling and supporting diagnostic software for mobile device manufacturers and network service providers.

11. Defendant HTC is a Texas corporation based in Bellevue, WA. It is engaged in the business of manufacturing and selling mobile devices nationwide, including throughout the State of Maryland.

12. Defendant Motorola is a Delaware corporation based in Illinois. It is engaged in the business of manufacturing and selling mobile devices nationwide, including throughout the State of Maryland.

13. Defendant Samsung Electronics America, Inc. is a New York corporation based in Ridgefield Park, NJ. It is engaged in the business of manufacturing and selling mobile devices nationwide, including throughout the State of Maryland.

14. Defendant Samsung Telecommunications America, LLC is a Delaware limited liability company based in Richardson, TX. It is engaged in the business of manufacturing and selling mobile devices nationwide, including throughout the State of Maryland.

15. Defendant Sprint is a Delaware limited partnership with its principal place of business at 903 E. 104th Street, Kansas City, Missouri  64131. It is engaged in the business of selling wireless network service nationwide, including throughout the State of Maryland.

16. Defendant T-Mobile is a Delaware corporation with its principal place of business at 3650 131st Avenue, SE, Suite 200, Washington 98006. It is engaged in the business of selling wireless network service nationwide, including throughout the State of Maryland.

17. Plaintiff Bert Glaser resides in and is a citizen of Maryland. He is an AT&T customer and uses an Apple phone. Carrier IQ's software is believed to be embedded or installed on his phone.

## FACTS COMMON TO ALL COUNTS

18. Carrier IQ sells software that is purportedly designed to help mobile device manufacturers and network service providers diagnose and resolve service and quality-related problems, such as dropped calls, reception issues and battery drain. According to Carrier IQ's website, "Carrier IQ is the leading provider of mobile intelligence solutions to the telecommunications industry," and "the only embedded analytics company to support millions of devices simultaneously."

19. The software, known as "IQ Agent," is currently loaded on over 140 million mobile devices. Carrier IQ has expressly denied that IQ Agent records keystrokes, provides tracking tools, or inspects or reports the content of communications, including SMS or text messages.

20. Last month, a technology blogger and security researcher named Trevor Eckhart reported that Carrier IQ's software was surreptitiously conducting highly intrusive tracking of cellular phones. Eckhart described the software as a keystroke logging rootkit that is hard-to-detect, hard-to-remove and programmed to run by default on millions of mobile phones without the users' knowledge.

21. The software runs when the phone is switched on and can log all activities until it is switched off. In addition to collecting device and service-related data, Carrier IQ's software can collect data about a user's location, application use, Web browsing habits, videos watched, texts read and even the keys they press.

22. The Electronic Privacy Information Center, a non-profit organization in Washington, D.C., has indicated that the use of Carrier IQ's software to log data may constitute an "unlawful intercept."

23. Former Unites States Department of Justice prosecutor Paul Ohm has stated that the use of the software could be grounds for private legal action.

24. On November 30, 2011, the United States Senate Committee on the Judiciary wrote a letter to Carrier IQ expressing deep concern about the scandal. Demanding immediate responses to 11 questions, the letter says that the actions alleged "may violate federal privacy laws, including the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act. This is a potentially very serious matter."

25. Defendants Apple, AT&T, HTC, Motorola, Samsung, Sprint and T-Mobile have admitted that they embed or pre-install Carrier IQ's software on many of their mobile devices.

### CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action pursuant to Maryland Rule 2-231 on behalf of himself and on behalf of the entire class of similarly situated persons (the "Class"). The proposed Class initially consists of:

    a. All individuals who reside in the State of Maryland who purchased or had a service contract for a mobile device on which IQ Agent was embedded or installed without the individual's consent.

    b. All individuals who reside in the State of Maryland whose wire, oral or electronic communications with individuals in subclass (a) were intercepted by IQ Agent.

Excluded from the Class are the Court and any of the Court's family members, Defendants, and their officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and

any entity in which any of them have a controlling interest, and federal governmental entities and instrumentalities.

27. Plaintiff believes that there are tens of thousands and, perhaps, millions of Class members throughout the State of Maryland, the exact number and their identities being known by Defendants, making the members of the Class so numerous that joinder of all members is impracticable.

### Maintainability of Class Action

28. There are common questions of law and fact on this action that are common to the Class, including but not limited to:

   a. Whether Defendants' actions violated the Maryland Consumer Protection Act.

   b. Whether Defendants' actions violated the Maryland Wiretapping and Electronic Surveillance Act.

   c. Whether Defendants' actions violated the Maryland Stored Wire and Electronic Communications Act.

   d. Whether Defendants' actions violated the Maryland Personal Information Protection Act.

   e. Whether Defendants' actions resulted in the knowing theft and conversion of Plaintiff's data and electronic information.

   f. Whether Defendants' actions resulted in the intentional interference and intermeddling with Plaintiff's personal property, including the electronic devices and data/information stored therein, resulting in the impairment of Plaintiff's legally protected interest in the privacy and confidentiality of such property.

29. Plaintiff's claims are typical to the claims of the Class. Plaintiff will fairly and adequately protect the interests of the Class.

30. This action is properly maintained as a class action under Maryland Rule 2-231(b)(1)(A) in that separate actions by or against individual members of the Class could create a risk of inconsistent

or varying adjudications with respect to individual members of the Class that could establish incompatible standards of conduct for Defendants.

31.     This action is properly maintained as a class action pursuant to Maryland Rule 2-231(b)(1)(B) in that separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not party to the adjudications, or would substantially impair or impede their ability to protect themselves.

32.     This action is properly maintained as a class action under Maryland Rule 2-231(b)(2) in that Defendants have acted or refused to act as alleged herein on grounds which are generally applicable to the Class and have, by reason of such conduct, made appropriate final injunctive relief, and corresponding declaratory relief, with respect to the entire Class as sought in this action.

33.     This action is also properly maintained as a class action under Maryland Rule 2-231(b)(3) in that questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy between the Class and Defendants.

### Desirability of Class Action

34.     The commonality of issues of law and fact and the potential of relatively limited liability of Defendants to each Class member substantially diminishes the interest of members of the Class in individually controlling the prosecution of separate actions. In addition, many of the members of the Class are unaware of their rights to prosecute a claim against Defendants. This class action can be managed without undue difficulty because Plaintiff will vigorously pursue the interests of the Class by virtue of the fact that Plaintiff has suffered the same losses as all other Class members.

35. Plaintiff's counsel are experienced in class actions and other complex litigation and will adequately represent the interests of the Class.

## COUNT ONE
### Violation of the Maryland Consumer Protection Act
### Md. Code Ann., Com. Law § 13-101, *et seq.*

36. Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

37. The Maryland Consumer Protection Act (the "CPA") prohibits unfair or deceptive trade practices in the offer or sale of any consumer goods or services.

38. Unfair or deceptive trade practices include any: (i) false or misleading statement or representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (ii) representation that consumer goods or services have a characteristic which they do not have; (iii) failure to state a material fact if the failure deceives or tends to deceive; (iv) advertisement or offer of consumer goods or services without the intent to sell them as advertised or offered; and (v) deception, false premise, misrepresentation, or knowing concealment, suppression or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services.

39. Consumer goods and services include goods and services which are primarily for personal, household or family purposes.

40. Any practice prohibited by the CPA is a violation whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice.

41. The mobile devices and services that Defendants offer and sell are consumer goods and services as defined by the CPA.

42. Defendants' actions as set forth herein constitute an unfair or deceptive trade practice within the meaning of the CPA in that: (i) Defendants' false or misleading representations regarding the privacy features of the mobile devices Defendants manufacture and/or service have the capacity, tendency, or effect of deceiving or misleading consumers; (ii) Defendants represent that the mobile devices Defendants manufacture and/or service have privacy features that they do not have; (iii) Defendants have failed to disclose material facts regarding the mobile devices Defendants manufacture and/or service, including the fact that IQ Agent is installed and operating on the devices, and that failure deceives or tends to deceive; (iv) Defendants advertise or offer the mobile devices that Defendants manufacture and/or service without the intent to sell them as advertised or offered; and (v) Defendants have engaged in deception, misrepresentation, and/or knowing concealment, suppression or omission of material facts regarding the mobile devices Defendants manufacture and/or service, including misrepresenting the privacy features of the devices and concealing, suppressing or omitting the fact that IQ Agent is installed and operating on the devices with the intent that Plaintiff would rely on the same.

43. The CPA provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the CPA]," and "may also seek [] reasonable attorney's fees."

WHEREFORE, Plaintiff requests that the Court enter a judgment finding that Defendants have violated the CPA and awarding Plaintiff damages for his injuries and losses and reasonable attorney's fees.

### COUNT TWO
**Violation of the Maryland Wiretapping and Electronic Surveillance Act**
**Md. Code Ann., Cts. & Jud. Proc., § 10-401,** *et seq.*

44. Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

45. Under the Maryland Wiretapping and Electronic Surveillance Act (the "Wiretap Act"), it is unlawful for any person to: (i) willfully intercept any wire, oral or electronic communication; (ii) willfully disclose or endeavor to disclose to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of [the Wiretap Act]; or (iii) willfully use or endeavor to use the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of [the Wiretap Act]. The Wiretap Act also prohibits a person or entity providing an electronic communication service to the public from intentionally divulging the contents of any communication in transmission on that service to any person or entity other than an addressee or intended recipient of the communication or an agent of the addressee or intended recipient.

46. Intercept means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

47. Electronic communication means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system."

48. Defendants' actions as set forth herein violate the Wiretap Act in that Defendants intercepted, disclosed or endeavored to disclose, used or endeavored to use and/or divulged the contents of Plaintiff's wire, oral or electronic communications by installing and operating IQ Agent on Plaintiff's mobile device.

49. The Wiretap Act provides that any person whose wire, oral or electronic communication is intercepted, disclosed or used in violation of the Wiretap Act shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose, or use the communications, and be entitled to recover from any person: (1) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

WHEREFORE, Plaintiff requests that the Court enter a judgment finding that Defendants have violated the Wiretap Act and awarding Plaintiff damages, including actual damages, statutory damages, punitive damages and reasonable attorney's fees and litigation costs.

## COUNT THREE
### Violation of the Maryland Stored Wire and Electronic Communications Act
### Md. Code Ann., Cts. & Jud. Proc. § 10-4A-01, *et seq.*

50. Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

51. Under the Stored Wire and Electronic Communications Act (the "SWECA"), "a person or entity providing an electronic communication service to the public may not knowingly divulge to any other person or entity the contents of any communication which is carried or maintained on that service."

52. Defendants' actions as set forth herein violate the SWECA in that they knowingly divulged the contents of communications carried or maintained on their services.

53. Under the SWECA, a subscriber or customer aggrieved by a knowing or intentional violation of the SWECA may recover appropriate relief in a civil action against the person or entity that

engaged in the violation, including (1) appropriate preliminary and other equitable or declaratory relief; (2) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case less than $1,000; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

WHEREFORE, Plaintiff requests that the Court enter a judgment finding that Defendants have violated the SWECA and awarding Plaintiff appropriate preliminary and other equitable or declaratory relief and damages, including actual damages, statutory damages and reasonable attorney's fees and litigation costs.

## COUNT FOUR
### Violation of the Maryland Personal Information Protection Act
### Md. Code Ann., Com. Law, § 14-3501, *et seq.*

54. Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

55. Under the Maryland Personal Information Protection Act (the "PIPA"), a business that owns or licenses personal information of an individual residing in the State of Maryland shall implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned or licensed and the nature and size of the business and its operations.

56. Personal information means an individual's first name or first initial and last name in combination with a social security number, driver's license number, or financial account number, including a credit card number or debit card number that, in combination with any required security code, access code or password, would permit access to an individual's financial account.

57. Defendants' actions as set forth herein violate the PIPA in that Defendants' have failed to implement and maintain reasonable and appropriate security procedures and practices to protect personal

information stored on and/or transmitted by Plaintiff's mobile device. Further, Defendants' installation and operation of IQ Agent on Plaintiff's mobile device has made Plaintiff's personal information vulnerable to security breaches.

58.    A violation of the PIPA is an unfair or deceptive trade practice and subject to enforcement under the Maryland Consumer Protection Act.

WHEREFORE, Plaintiff requests that the Court enter a judgment finding that Defendants have violated the PIPA and awarding Plaintiff damages for his injuries and losses and reasonable attorney's fees.

## COUNT FIVE
### Conversion

59.    Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

60.    Plaintiff is the owner and/or rightful possessor of the data and metadata stored upon or otherwise transmitted from his mobile device. Such data includes, but is not limited to, the data about a user's location, application use, Web browsing habits, videos watched, texts read and even the keys they press.

61.    Defendants, with knowledge that this data was owned by Plaintiff, took and unlawfully converted it to Defendants' own use and benefit.

62.    Defendants did not attempt to obtain Plaintiff's consent for this unlawful conversion of Plaintiff's data and Defendants did not, at any time, obtain Plaintiff's consent for this unlawful conversion of Plaintiff's data.

63.    Defendants were never in lawful possession of Plaintiff's data and Plaintiff therefore has no obligation to demand the return of said data before seeking damages for conversion.

64. Defendants' conversion of Plaintiff's data is continuing as Defendants have not returned the data that was taken and continues, through the unimpeded operation of IQ Agent, to improperly take, intercept, collect, use, or otherwise convert Plaintiff's data.

65. The taking and conversion of Plaintiff's data by Defendants was done willfully and maliciously and/or with a reckless disregard for Plaintiff's rights.

66. Plaintiff was harmed by Defendants' taking and potential use or disclosure of Plaintiff's confidential data and are entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages and reasonable attorney's fees.

## COUNT SIX
### Intrusion Upon Seclusion

67. Plaintiff adopts by reference the facts and allegations in all preceding paragraphs of this Complaint as if fully set forth herein.

68. Defendants' use of IQ Agent to intrude upon Plaintiff's data and information through improper collection, interception, use, or conversion thereof constituted an unauthorized intrusion or prying into Plaintiff's seclusion.

69. Defendants' improper collection, interception, use, or conversion of Plaintiff's data and information was done intentionally, willfully, maliciously, and/or with reckless disregard for Plaintiff's privacy rights.

70. Defendants' unauthorized intrusion or prying into Plaintiff's seclusion would be highly offensive or objectionable to a reasonable person as the data and information intruded upon concerned private matters.

71.  Defendants did not attempt to obtain Plaintiff's consent for this unauthorized intrusion into Plaintiff's data and Defendants did not, at any time, obtain Plaintiff's consent for this unauthorized intrusion into Plaintiff's data and information.

72.  Defendants' unauthorized intrusion caused or resulted in Plaintiff's anguish and suffering over the discovery and potential disclosure of Plaintiff's personal and private data and information.

73.  Plaintiff was harmed by Defendants' unauthorized intrusion and potential use or disclosure of Plaintiff's confidential data and information and is entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A.  Determine that this action is a proper class action under Maryland Rule 2-231;

B.  Award compensatory damages, including statutory damages where available, in favor of Plaintiff and the other members of the Class for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Permanently restrain Defendants and their officers, agents, servants, employees and attorneys from installing IQ Agent or any other rootkit software that could track a cellular phone or other mobile device user's information in violation of federal law;

D.  Award Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Grant Plaintiff such further relief as the Court deems appropriate.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/ William H. Murphy, Jr.
_____
William H. Murphy, Jr. – Bar No. 07985
Murphy, P.A.
One South Street – 23rd Floor
Baltimore, Maryland 21202
Ph: (410) 539-6500
Fax: (410) 539-6599
billy.murphy@murphypa.com
Attorneys for Plaintiff

Dated: January 18, 2012